UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHAWN DUDLA, d/b/a Nu Visions
Enterprises,

                              Plaintiff,

        -against-                                    1:13-cv-0333 (LEK/DJS)

P.M. VEGLIO LLC, d/b/a Paul Mitchell the
School Oveido, *et al.*,

                              Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

*Pro se* Plaintiff Shawn Dudla ("Plaintiff") commenced the present action against Defendants

P.M. Veglio LLC ("Veglio LLC"); Von Curtis, Inc. ("Von Curtis");[1] Giulio Veglio ("Veglio"); and

Winn C. Claybaugh ("Claybaugh") (collectively "Defendants") under 28 U.S.C. § 1332 alleging

breach of contract claims.  Dkt. No. 1 ("Complaint").  On July 17, 2013, Plaintiff filed an Amended

Complaint realleging his breach of contract claims and adding numerous constitutional claims and

additional state-law claims arising out of the same dispute.  Dkt. No. 11 ("Amended Complaint").

Presently before the Court are Defendants' Motion to dismiss, Plaintiff's Motion to strike that

Motion, and Defendants' Cross-Motion for sanctions.  Dkt. Nos. 51 ("Motion"); 58 ("Motion to

Strike"); 64 ("Sanctions Motion").  For the following reasons, the Motion to dismiss is granted and

the Motion to strike and the Cross-Motion for sanctions are denied.  Plaintiff's Amended Complaint

is therefore dismissed without leave to amend.

_____

    [1] Von Curtis is referred to in the Amended Complaint as "Von Curtis, Inc., d/b/a Paul
Mitchell the School Orlando" and is discussed in various filings as Paul Mitchell the School
Orlando.  Dkt. No. 11 ("Amended Complaint") ¶ 3.

## II.   BACKGROUND[2]

The parties are presumed to be familiar with the background of this case, and only those

facts necessary to the resolution of the pending Motions are repeated here.  For a complete statement

of Plaintiff's allegations and claims, reference is made to the Amended Complaint.  Plaintiff's

claims arise from a contract with Defendants and a related lawsuit filed in the 9th Judicial Circuit,

Osceola County, Florida, on December 26, 2012, by Von Curtis, Inc. d/b/a Paul Mitchell The

School Orlando (the "Florida action").  Am. Compl.; Dkt. No. 11-1 at 55-62 ("Florida Complaint").[3]

### A.  The Contract

In April of 2012, Plaintiff consulted with Veglio regarding "Low Voltage Engineering" work

associated with the relocation of Paul Mitchell the School Orlando from Orlando to Oviedo.  Am.

Compl. ¶ 15.  Plaintiff then placed a bid for the engineering work at the school's new location on or

---

[2] "A party may properly raise a challenge based on theories of preclusion in a motion to dismiss pursuant to Rule 12(b)(6)."  Res. N.E. of Long Island, Inc. v. Town of Babylon, 28 F. Supp. 2d 786, 791 (E.D.N.Y. 1998) (citing Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994). Therefore, although Defendants do not specifically reference Rule 12(b)(6) or its language, the Court construes the discussion of preclusion in the Motion to dismiss as being brought under Rule 12(b)(6).  As a result, the factual allegations of the Amended Complaint are accepted as true and form the basis of this section.  See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").  Furthermore, as Plaintiff is proceeding *pro se*, the Amended Complaint "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

[3] Plaintiffs' fifty-five Exhibits have been split among Dkt. Nos. 11-1 through 11-9. Plaintiff's Exhibit 6 is the complaint in the Florida action, and it starts on Page 55 of Dkt. No. 11-1, running for eight pages, with thirty-five pages of related papers.  Subdivisions of Exhibits are cited by paragraph numbers where possible, but if pagination is used, it will be the pagination assigned by the Court's Electronic Court Filing ("ECF") system.  The Court addresses its ability to consider Exhibits attached by both Plaintiff and Defendants in Part III.C.1, *infra*.

about July 12, 2012, and was awarded the contract soon afterward.  Id.  Plaintiff's contract, however, was accepted by Veglio with $35,000 in unauthorized alterations, and Plaintiff withdrew his bid on July 20, 2012.  Id.  After two days of receiving voicemails and text messages from Veglio, Plaintiff reconciled with and met with Veglio in person on July 24, 2012, and reached an agreement on the contents of the contract as well as the policy for alterations.  Id.  After another meeting on July 27, 2012 where further changes were discussed, Veglio and Plaintiff signed the agreement on July 31, 2012, which was officially executed between Plaintiff, Veglio, and "P.M. Veglio, LLC d/b/a Paul Mitchell the School Oveido."  Id.[4]  Plaintiff commenced work on August 24, 2012, and worked until either November or December of 2012.  Id. ¶ 16.

### B.  The Florida Action[5]

The Florida action was commenced on December 27, 2012 by the filing of a complaint listing Von Curtis as the sole plaintiff and alleging various breach of contract claims against Plaintiff arising from the engineering work.  Id. ¶ 17, Florida Compl. at 1.  Plaintiff filed a motion for summary judgment on February 6, 2013, alleging lack of jurisdiction and that Plaintiff lacked standing to sue as Von Curtis was not itself a party to the contract.  Dkt. No. 11-2 at 6-47.  On March 20, 2013, Von Curtis moved to amend the Florida Complaint to, among other things, add the

---

[4] While the relationship is not discussed in detail by any party, Defendant Veglio LLC appears to be the successor company to Von Curtis regarding its interest in Paul Mitchell the School Orlando after its relocation from Orlando to Oviedo.  See Am. Compl. ¶¶ 2-3, 15.  Veglio LLC's full name is referred to in all court documents by all parties with the spelling "Oveido."  E.g., id. ¶ 15; Dkt. No. 51-1 ("Affirmation") at ¶¶ 2, 12, 22.

[5] The Court notes that Plaintiff was the defendant in the Florida action and Defendants were the plaintiffs. However, for the sake of consistency, the Court will continue to refer to the parties in this section by their designations in the instant case rather than those used in the Florida action; that is, "Plaintiff" will refer to Dudla and not to Veglio LLC and the other plaintiffs in the Florida action.

3

remaining Defendants in the instant case as plaintiffs. Dkt. No. 11-4 at 5-6; see also id. at 8-45 ("Florida Amended Complaint").[6] Plaintiff opposed the motion to amend, Dkt. No. 11-4 at 47-60, and included a "General Answer to Complaint," id. at 51-52. This "general answer" did not assert a jurisdictional defense or any other affirmative defenses.

A hearing was held on the motion to amend on April 1, 2013. Id. at 62-79 ("April Transcript");[7] see also Am. Compl. ¶ 19. At the April 1 hearing, while the Florida state court was considering the motion to amend, Plaintiff instead argued that subject matter and personal jurisdiction did not exist due to the fact that Von Curtis was the only named plaintiff, and thus the motion to amend should not be considered. Apr. Tr. at 68:17-70:9. The court allowed the motion to amend. Id. at 71:2-4. It then denied Plaintiff's motion for summary judgment, as it was "the wrong motion to be filing for personal jurisdiction and subject matter jurisdiction." Id. at 71:9-12. The court noted that Plaintiff had likely waived his personal jurisdiction defense due to the inclusion of the "general answer" in the opposition to the motion to amend. Id. at 71:20-22.

---

[6] The Florida Amended Complaint, attached to Plaintiff's Amended Complaint as Exhibit 16, starts on Page 8 of Dkt. No. 11-4, running for nine pages, with twenty-nine pages of related documents. Dkt. No. 11-4 at 8-45.

[7] The April Transcript is attached as Exhibit 18 to the Amended Complaint, starting on page 62 of Dkt. No. 11-4 and running for eighteen pages. Dkt. No. 11-4 at 62-79. The pagination used in this Memorandum-Decision and Order is that assigned by ECF as opposed to the pagination in the original document. The Court notes that there is some indication that Plaintiff created this transcript, as well as the transcript attached as Exhibit 22, Dkt. No. 11-8 at 2-20 ("June Transcript"), from an impermissible recording of the hearings in front of the Florida state court. See June Tr. at 10:8-18 ("You're not allowed to record this conversation by the way . . . . I noticed in one of your prior affidavits you were quoting something and there's not a court reporter here so it would be improper to put anything in quotations that the Court or a witness or a party may say.") However, for the purpose of addressing the Motion to dismiss, the Court will adhere to the rule that "[d]ocuments attached to a complaint . . . may be considered on a motion to dismiss." E.E.O.C. v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000); see also FED. R. CIV. P. 10(c).

On April 3, 2013, Plaintiff filed a motion to dismiss the Florida Complaint for lack of

subject matter and personal jurisdiction. Dkt. No. 11-2 at 53, 55-98. After service of the Florida

Amended Complaint, Plaintiff filed an answer on May 10, 2013, which did not assert or reserve

jurisdictional defenses. Dkt. No. 55-3 at 94-103. He then moved to dismiss the Florida Amended

Complaint for the same reasons, adding that the original Florida Complaint was a result of fraud

upon the court. Dkt. No. 11-6 at 9; see also Dkt. Nos. 11-3 (supplemental affidavit); 11-7 (second

portion of exhibits attached to motion to dismiss Florida Amended Complaint). A hearing was held

on the motion to dismiss on June 11, 2013. Dkt. No. 11-8 at 2-20 ("June Transcript").[8] At the

hearing, Plaintiff discussed at length that Von Curtis did not have standing to sue due to not being a

named party on the contract. Id. at 7:22-8:15, 9:9-10:6. Plaintiff also argued that service was not

properly effectuated as proof of service was insufficient. Id. at 8:16-9:8. Defendants claimed that

both Plaintiff's motion for summary judgment and his answer waived all defenses except subject

matter jurisdiction, which existed due to the allegation of sufficient damages in both the Florida

Complaint and the Florida Amended Complaint. Id. at 13:1-9. Defendants also noted that they had

properly served Plaintiff's mother with the Florida Amended Complaint, which they claim Plaintiff

did not contest. Id. at 14:1-10. Plaintiff, in rebuttal, emphasized that the initial service of process

was defective, id. at 15:10-24, and that there was not enough proof attached to the Florida Amended

Complaint regarding amount in controversy or venue, id. at 16:1-17:4. The court denied Plaintiff's

motion, noting on two separate occasions that Plaintiff had filed a formal answer on May 10. Id. at

11:22-24, 17:14, 18:3. However, counsel for Defendants stated to the court that they would consent

---

[8] The June Transcript is attached as Exhibit 22 to the Amended Complaint, starting at page 2
of Dkt. No. 11-8 and running for nineteen pages. Dkt. No. 11-8 at 2-20. The pagination used is that
assigned by ECF as opposed to the pagination in the original document.

to Plaintiff amending his answer to include jurisdictional arguments.  Id. at 18:3-14.  Plaintiff did

not do so.  Case Search, Official Website for the Osceola County Clerk of the Circuit Court,

https://courts.osceolaclerk.org/ BenchmarkWeb/Home.aspx/Search (select "Case Number" and

search for "2012 CA 5882CI") ("Florida Docket Sheet") (last visited March 7, 2016).

On January 29, 2014, the initial judge assigned in the Florida action disqualified himself

after a motion by Plaintiff, and the case was reassigned on January 30, 2014.  Dkt. No. 55-2 at 35-

37.  This was shortly followed by an order from the court on February 5, 2014 prohibiting any

further telephone hearings and instead mandating in-person hearings for all future conferences.  Dkt.

No. 55-2 at 38-39.  On February 12, 2014, Plaintiff also filed a motion (1) asking for reconsideration

of the April 1, 2013 proceeding, (2) asking to vacate "all Court Orders made subsequent to the April

1st, 2013 proceeding," and (3) as a third motion to dismiss the case, as well as (4) requesting $100

per day in sanctions against Defendants.  Dkt. No. 55-3 at 71-93.  This motion to reconsider and

dismiss was denied on March 13, 2014.  Dkt. No. 55-2 at 41.[9]

On April 14, 2014, the court entered a default against Plaintiff based on a motion by

Defendants for an order to show cause, which Plaintiff opposed.[10]  Dkt. No. 55-2 at 42 ("Florida

Default").[11]  The court noted that Plaintiff had indisputably received discovery and did not properly

---

[9] While it appears clear from the stamp on the order that it was issued in March 2014, neither
Plaintiff's copy of this order, Dkt. No. 55-2 at 41, nor Defendants' copy of this order, Dkt. No. 51-5,
have a sufficiently legible stamp to allow the Court to determine the actual date. Looking to the
Florida Docket Sheet, it appears that the motion was denied on March 13, 2014.  Fla. Docket Sheet.

[10] Neither the order to show cause nor the opposition appears to be attached by either party.

[11] The Florida Default, as Composite Exhibit 13 attached to Plaintiff's Response, starts on
Page 42 of Dkt. No. 55-2, running for eight pages.  Dkt. No. 55-2 at 42-49.  As mentioned above,
the pagination used is that assigned by ECF as opposed to the pagination in the original document.

respond to any of the discovery requests. Id. at 42-43. A hearing had been held on a motion to compel on December 16, 2013, with Plaintiff calling in remotely, and Plaintiff, even after the entry of an order to compel, continued to refuse to comply with the order and continued to assert jurisdictional defenses, claiming "entrapment." Id. at 43-44. The court found that there was no evidence of any kind of entrapment, and that Plaintiff's jurisdictional arguments had already been litigated and repeatedly decided. Id. at 44-45. The court noted an email from Plaintiff, in response to Defendants' willingness to accept untimely responses to discovery requests, mostly contained conclusory assertions regarding misconduct and fraud. Id. at 45. Therefore, the court deemed the facts of the Florida Amended Complaint admitted, Plaintiff's pleadings stricken, and limited the remainder of the case to resolving the issue of damages. Id. at 48-49.

On April 24, 2014, Plaintiff filed a motion to disqualify the second judge in the Florida action, due to willful fraud, failure to perform duties, partiality toward Defendants, criminal conduct, conflict of interest, coercion and duress, and collusion. Dkt. No. 55-2 at 53-56. On April 25, 2014, the court denied Plaintiff's motion as "more concerned with [Plaintiff]'s disagreement of the rulings in the Orders entered by the Court" and noted that an appeal would be the appropriate manner of redress for Plaintiff. Id. at 59.

Plaintiff filed a fourth motion to dismiss the original Florida Complaint on May 5, 2014. Dkt. No. 55-3 at 104-124. Plaintiff, in addition to the claims regarding jurisdiction, also alleged that Defendants' counsel never properly appeared in the Florida action and thus could not have prosecuted the case and that Defendants had failed to state a cause of action. Id. On June 19, 2014, the court denied this motion, relying on previous denials of similar motions. Dkt. No. 55-2 at 63.

On August 8, 2014, the Florida action was set for trial, with a pretrial conference scheduled

for February 11, 2015. Dkt. No. 55-2 at 64. The order setting the case for trial explicitly stated that no telephone appearances would be approved, and that mediation would be required. Id. On August 27, 2014, Defendants filed a motion for the imposition of sanctions and for the appointment of a mediator. Id. at 76. Plaintiff cross-claimed on September 24, 2014, asserting jurisdictional defenses, and the court denied this cross-claim only, restating the applicable legal principles. Id. at 76-77. The court noted that the jurisdictional requirement of $15,000 had been sufficiently pled in this case, and that that was sufficient for subject matter jurisdiction. Id. Furthermore, personal jurisdiction existed because Plaintiff first filed an answer before moving to dismiss based on lack of personal jurisdiction, thus waiving his right to contest personal jurisdiction. Id. at 77. On October 2, the court granted Defendants' motion and appointed a mediator, noting that mediation must occur within forty-five days. Id. at 80.

Plaintiff filed a second motion to disqualify the second judge in the Florida action on September 22, 2014, for the same reasons as in the April motion to disqualify and alleging that further ex parte hearings had taken place. Dkt. No. 52 at 72. The court denied the motion on September 23, 2014, noting that the hearings were ex parte because Plaintiff refused to appear for the hearings. Id. at 73. Plaintiff also filed a fifth motion to dismiss on November 13, 2014. Dkt. No. 55-3 at 125-149. This motion asserted the same subject matter jurisdiction claims Plaintiff had included in his previous four motions to dismiss. Id. The motion was denied on November 18, 2014. Fla. Docket Sheet.[12]

After multiple contentious rounds of attempted discovery, Dkt. No. 55-4 at 78-96, Plaintiff filed a "motion of summary judgment to dismiss" for lack of subject matter jurisdiction and

---

[12] Neither party has attached the Florida state court's order denying this motion.

personal jurisdiction on February 3, 2015.  Id. at 1-49.  After the passage of the scheduled pretrial conference date, Defendants filed a motion for fees on February 14, 2015, stating that Plaintiff had not attended, and requesting attorneys' fees for the time spent preparing for and attending the conference.  Dkt. No. 55-4 at 73-77.  The court granted Defendants' motion for fees on February 23, 2015 and assessed $2565.00 in sanctions.  Dkt. No. 55-2 at 86-87.  The court, relying on the passage of the February 11 pretrial conference date, refused Plaintiff's request to calendar his motion on February 27, 2015, id. at 89, and set the case for nonjury trial starting on April 1, 2015.  As a result of Plaintiff's failure to submit to mediation or pay his portion of the mediation fee, the court, on March 5, 2015, further sanctioned Plaintiff $9163.90.  Dkt. No. 55-2 at 93-94.

Plaintiff did not appear at the nonjury trial on April 1, 2015.  Dkt. No. 55-2 at 98 ("Florida Final Judgment").[13]  As a result of the facts pleaded in the Florida Amended Complaint, Defendants established that they were entitled to recover $135,751.94 from Plaintiff, and judgment was entered in that amount on April 17, 2015.  Id. at 102.  Plaintiff did not appeal this judgment.  Fla. Docket Sheet.

On May 15, 2015, Plaintiff filed a motion to reopen the case, vacate all orders and judgments entered, and dismiss the case.  Dkt. No. 55 at 24-42 ("Florida Motion to Reopen"); 43-121 ("Florida Motion to Reopen Affidavit");[14] see also Fla. Docket Sheet.  This motion was denied on June 26, 2015.  Dkt. No. 66-1 at 1-2.  The court also considered a motion from Defendants for

---

[13] The Florida Final Judgment, as Composite Exhibit 27 attached to Plaintiff's Response, starts on Page 96 of Dkt. No. 55-2, running for eleven pages.  Dkt. No. 55-2 at 96-106.  The pagination used is that assigned by ECF as opposed to the pagination in the original document.

[14] The pagination used is that assigned by ECF as opposed to the pagination in the original document.

9

fees and costs on this day, Fla. Docket Sheet, and ordered Plaintiff to reimburse Defendants for

attorneys' fees and costs in the amount of $79,583.49.  Dkt. No. 66-1 at 12.  Plaintiff appealed this

ruling on July 23, 2015, and that limited appeal is still pending.  Dkt. No. 73 at 40-42 ("Notice of

Appeal"); see also Fla. Docket Sheet.[15]

### C.  Procedural History

Plaintiff filed the instant action on March 25, 2013, asserting diversity of citizenship and

alleging (1) fraud in the filing of the Florida action and (2) breach of contract.  Compl. ¶¶ 7-26.

Plaintiff claimed at least fifty-two separate breaches of the contract stemming from disagreements

over amendments and the resulting "Change Orders."  Id. ¶¶ 16; 47-61.  Defendants filed a Motion

to dismiss on June 20, 2013, claiming that Plaintiff had not established diversity of citizenship with

Veglio or personal jurisdiction over Defendant Winn Claybaugh ("Claybaugh") and had failed to

serve both corporate Defendants.  Dkt. No. 9.  On July 17, 2013, Plaintiff then requested leave to

file an amended complaint, Dkt. No. 12, along with his proposed Amended Complaint alleging the

following five causes of action, construed liberally: (1) fraudulent use of the Florida action to avoid

paying Plaintiff the amount owed on the contract; (2) deprivation of Plaintiff's constitutional rights

as a result of the Florida state court's decision; (3) breach of contract claims due to intentional

misconduct by Veglio and Veglio LLC; (4) damages for profits lost as a result of the impairment of

business relationships between Plaintiff and Defendants' associates; and (5) fraudulent use of the

Florida action to wrongfully secure a monetary award from Plaintiff, Am. Compl. ¶¶ 25-73.[16]

---

[15] Neither party has attached any documents that postdate the Notice of Appeal.

[16] Plaintiff filed a parallel action in the Northern District of New York on July 18, 2014. Dudla v. Jordan, No. 14-cv-0889, 2015 WL 403079, at *1 (N.D.N.Y. Jan. 29, 2015) (Kahn, J.). Named as defendants in this action were the judges in the Florida action, their support staff, the

Plaintiff requested (1) $103,198.28, plus interest, regarding the third cause of action; (2) an additional $100,000 in damages from each of the four Defendants as a result of the fourth cause of action; (3) that the Court "take Jurisdiction over the Florida court proceedings" due to the first, second, and fifth causes of action; (4) additional punitive damages of $150,000 from each Defendant; and (5) attorney's fees and costs. Id. ¶¶ 75-80. On February 28, 2014, the Court granted Plaintiff leave to substitute his proposed amended complaint as the Amended Complaint. Dkt. No. 19 ("February Order").[17] Pursuant to an Affidavit filed by Veglio on March 19, 2014, the Court found that subject matter jurisdiction existed in the case on April 4, 2014. Dkt. Nos. 20; 26.

Defendants filed an Answer on April 24, 2014. Dkt. No. 29 ("Answer"). The Answer denied nearly every fact alleged in the Amended Complaint and reserved twenty affirmative defenses. Id. After a Rule 16 conference on March 18, 2015, Defendants' deadline to file a dispositive motion was set for April 30, 2015. Minute Entry dated March 18, 2015. On April 28, 2015, defense counsel filed a Letter Motion with the Court asking for a four-day extension to file a motion, stating that Plaintiff had not responded to her direct requests to consent to the extension. Dkt. No. 47. The Court granted the Letter Motion on April 29, 2015. Dkt. No. 49. On April 29 and

_____

State of Florida, Osceola County, and Defendants' counsel, both individually and as a law firm. Id. The action alleged that "the Florida court's lack of subject matter and personal jurisdiction deprived him of his rights to Due Process and Equal Protection under the 14th Amendment." Id. This case was dismissed due to lack of personal jurisdiction over Defendants and improper venue. Id. It was dismissed instead of transferred because "Defendants have raised significant immunity grounds for dismissing Plaintiff's Complaint." Id. at *7.

[17] Plaintiff's Amended Complaint was filed two days after the deadline to amend a pleading as a matter of course pursuant to Rule 15(a)(1). See Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ."). In the February Order, the Court construed Plaintiff's request "as a motion to extend the deadline for amending as of course." Feb. Order at 3.

30, 2015, both parties filed copies of their email correspondence in which Plaintiff independently consented to the adjournment. Dkt. Nos. 48; 50. Defendants' Motion to dismiss was then filed on May 4, 2015. Mot. Defendants argued that the Court lacked jurisdiction under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and under the <u>Rooker</u>-<u>Feldman</u> doctrine, and that Plaintiff was also precluded from bringing each of his claims, as they had all been fully and fairly litigated in the Florida action. Dkt. No. 51-12 ("Memorandum") at 2-5. Plaintiff filed a Response on May 19, 2015, and Defendants filed a Reply on May 26, 2015. Dkt. Nos. 55 at 1-23 ("Response");[18] 56 ("Reply").

On June 4, 2015, Plaintiff filed a Motion to strike the Motion to dismiss, alleging that the Motion to dismiss violated Local Rule 7.1(a)(1) due to a lack of a Table of Contents or a Table of Authorities, Local Rule 7.1(b)(1) due to untimely service, and Local Rule 10.1(b)(5) due to Defendants' Reply including double-sided sheets of paper. Dkt. No. 58-3 ("Strike Memorandum") at 3-5.[19] Defendants filed an Affidavit in opposition to Plaintiff's Motion to strike, along with a Cross-Motion for sanctions, on June 29, 2015. Cross-Mot. Defendants noted that all motion papers had been timely filed and that Plaintiff's Motion was vexatious and frivolous. Dkt. No. 64-9 ("Sanctions Memorandum") at 4-9.[20] Plaintiff, in a Response filed on July 6, 2015 and a Supplemental Response filed on July 27, 2015, realleged that Defendants' papers were not timely, and that in addition, Defendants' papers should all be stricken due to fraud, misrepresentation, and

---

[18] Only the initial twenty-three pages of Dkt. No. 55 is part of the Response, with the Florida Motion to Reopen attached as the remaining 98 pages. Dkt. No. 55 at 24-121.

[19] The pagination used is that assigned by ECF as opposed to the pagination in the original document.

[20] The pagination used is that assigned by ECF as opposed to the pagination in the original document.

deception. Dkt. Nos. 71 ("Sanctions Response") at 8-18; 73.

## III. DISCUSSION

### A. Motion to Strike

Plaintiff moves to strike Defendants' Motion to dismiss and the Reply due to (1) untimeliness under the Local Rules, (2) various technical violations of the Local Rules, (3) scandalous and misleading material, and (4) abandonment of defenses. Strike Mem. The Court will address each of these in turn.

Plaintiff's first claim is that Defendants' papers were filed too late to be considered under the Local Rules, regardless of the extension granted by the Court. Strike Mem. at 6-8; Dkt. No. 49. The Motion to dismiss was filed and served by May 5, 2015. Dkt. No. 53. May 5, 2015 is thirty-one days before June 5, 2015. Therefore, Defendants complied with the Local Rules in filing the Motion to dismiss. Defendants' Reply was filed and served on May 26, 2015. Dkt. No. 57. While May 26, 2015 is only ten days before June 5, 2015, deadlines that fall on holidays are extended into the next business day, and May 25, 2015 was a federal holiday. Therefore, there are no timeliness issues with Defendants' filings.[21]

Plaintiff's second claim is that Defendants' filings do not conform with the Local Rules. Plaintiff cites Local Rule 7.1(a)(1), which requires memoranda of law to have a table of contents and for hard copies of unpublished decisions to be provided to *pro se* litigants as well as Local Rule 10.1(b)(5), which states that all documents must be single-sided. Strike Mem. at 8-9. First, the

---

[21] It should be noted that the reasons given by Defendants for the extension would likely amount to "good cause shown," an exception noted by Plaintiff in his quotation of Rule 7.1. Strike Mem. at 7. Even if it were not, the Court has the inherent power, as mentioned below, to excuse parties for any departure from the Local Rules.

Court notes that Defendants do not cite any unpublished decisions in their motion papers. Mem. Local Rule 7.1 does not require a counseled party to provide all of their research to a *pro se* opposing party; it is merely to ensure that *pro se* litigants have access to relevant cases not published by reporters. With regard to the other two claims, "district courts have 'inherent power to decide when a departure from its Local Rules should be excused or overlooked.'" <u>Assoc. for Retarded Citizens of Conn., Inc. v. Thorne</u>, 68 F.3d 547, 553 (2d Cir. 1995) (quoting <u>Somlyo v. J. Lu-Rob Enters.</u>, 932 F.2d 1043, 1048 (2d Cir. 1991)). The interests of justice would not be served by disqualifying Defendants' papers due to a failure to provide single-sided documents or to include a table of contents. It should be noted that Plaintiff has also failed to include a table of contents in his Opposition Memorandum; the Court, however, will not strike Plaintiff's papers as it would not serve the interests of justice.

Plaintiff's third claim is that Defendants' pleadings contain scandalous matter. The Second Circuit has held that to prevail on a claim of scandalous matter it must "be shown that no evidence in support of the allegation would be admissible." <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976); <u>see also</u> <u>Dotson v. City of Syracuse</u>, No. 11-CV-0620, 2014 WL 526626, at *1 (N.D.N.Y. Feb. 7, 2014) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." (quoting <u>Lipsky</u>, 551 F.2d at 893)). In this case, there is no indication that Defendants have raised anything in their defensive pleadings that could not be proven in court. Since the Court can find no inherent prejudice to Plaintiff that would result from Defendants' pleadings, <u>Roe v. City of New York</u>, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001), this claim is denied.

Plaintiff's final claim is that Defendants' pleadings have admitted operative facts. The

Answer filed by Defendants rebuts this claim. Dkt. No. 29. Even if this were true, the remedy for Plaintiff is not to strike the pleadings, but to deem such facts admitted when considering the merits of the claims. Thus, Plaintiff has not stated a reason to strike or otherwise not consider Defendants' pleadings, and his Motion to strike is denied.

### B. Subject Matter Jurisdiction

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss that action." FED. R. CIV. P. 12(h)(3). "Whether a federal court has subject matter jurisdiction is a question that 'may be raised at any time . . . by the court sua sponte.'" McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001); accord Humphrey v. Court Clerk ex rel. U.S. Supreme Court, No. 11-CV-0938, 2012 WL 264603, at *3 n.6 (N.D.N.Y. Jan. 30, 2012). Defendants raise two arguments against finding subject matter jurisdiction in this case: Younger abstention and the Rooker-Feldman doctrine. Mem. at 4-5. For the following reasons, the Court declines to dismiss the action on jurisdictional grounds.

### 1. Younger Abstention

A federal court's obligation to decide cases in which it has jurisdiction is "virtually unflagging." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). However, federal courts "refrain from hearing cases that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (citing Younger v. Harris, 401 U.S. 37 (1971)). The Supreme Court has recently narrowed the type of state proceedings that implicate Younger into three categories: "[1] ongoing state criminal prosecutions . . . [2] certain 'civil enforcement proceedings,' [and] [3] 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to

perform their judicial functions.'" <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 134 S. Ct. 584, 591 (2013)

(quoting <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 368

(1989)).

Civil cases that implicate <u>Younger</u> under the second or third category mentioned in <u>Sprint</u>

generally require the state to be a party. <u>E.g.</u>, <u>Trainor v. Hernandez</u>, 431 U.S. 434, 443-44 (1977);

<u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 603 (1975); <u>see also</u> <u>Moore v. Sims</u>, 442 U.S. 415, 423

(1979) ("As was the case in <u>Huffman</u>, the State here was a party to the state proceedings . . . .").

That alone, however, is typically not enough, and another factor must be present. Acceptable factors

include the state's role being "in aid of and closely related to criminal statutes," <u>Moore</u>, 442 U.S. at

423 (quoting <u>Huffman</u>, 420 U.S. at 604), the "presence of such other vital concerns as enforcement

of contempt proceedings," <u>id.</u> (citing <u>Juidice v. Vail</u>, 430 U.S. 327), "or the 'vindication of

important state policies such as safeguarding the fiscal integrity of [public assistance] programs," <u>id.</u>

(citing <u>Trainor</u>, 431 U.S. at 444).

In the Florida action, there is no indication that any state actors, or individuals or entities

with official governmental capacity, were ever parties to the case. Fla. Compl. ¶¶ 2-3; Fla. Am.

Compl. ¶¶ 2-5; Fla. Default at 44-45; Fla. Final J. at 106. Nor was the action in aid of criminal

statutes, in contemplation of important state policies, or to enforce an order of contempt; the cause

of action was a breach of contract and related matters. Fla. Compl. ¶¶ 10, 13, 23; Fla. Am. Compl.

¶¶ 26, 30, 34, 37, 47. As a result, the Court finds that <u>Younger</u> abstention is inapplicable in this

case.[22]

---

[22] If the Florida action were still active, there would be strong arguments for abstaining from
the instant action under <u>Colorado River</u>. 424 U.S. at 817-18; <u>see also</u> <u>Vill. of Westfield v. Welch's</u>,
170 F.3d 116, 122 (noting that <u>Colorado River</u> abstention may apply where pending state-law

16

## 2. *Rooker-Feldman* Doctrine

The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see also Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) (stating that under the Rooker-Feldman doctrine "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in the United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights"). Plaintiff commenced the instant action on March 25, 2013. Default judgment was not entered in the Florida action until after a motion on April 8, 2014. Fla. Default J. at 1. A final judgment was entered in the Florida action on April 17, 2015. Fla. Final J. at 8. Thus, as the Florida action was still active and unresolved at the time the instant Complaint was filed, the Rooker-Feldman doctrine is inapplicable to dismiss this action.

### C. Preclusion

Defendant argues that the Florida action precludes Plaintiff from bringing these claims under both claim and issue preclusion. Mem. at 2-4. Plaintiff, in his Response, acknowledges that the Florida action resulted in a final judgment dated April 17, 2015, but claims that the Florida court lacked jurisdiction. Resp. Mem. at 2, 6. "[I]rrespective of which action or proceeding was first brought, it is the first final judgment rendered in one of the courts which becomes conclusive in the other as res judicata." Chicago, Rock Island & Pac. Ry. Co. v. Schendel, 270 U.S. 611, 616-17 (1926); see also Williams v. Ward, 556 F.2d 1143, 1154 (2d Cir. 1977) (noting that a suit filed

_____

actions adequate to provide the parties with relief might contribute to piecemeal litigation).

while a related suit was pending could have preclusive effect because "when the latter proceeded to final judgment first it became a bar to the former if the underlying claims are the same"). Since the Florida Judgment, therefore, would have preclusive effect on the instant action if it is valid, the Court turns first to the question of the Florida Judgment's recognition.

### 1. *Documents Outside the Pleadings*

Before addressing the merits, the Court will clarify which documents are being considered in determining whether the Florida judgment is entitled to preclusive effect. Typically, consideration of matters outside the pleading will convert a Rule 12(b)(6) motion into a motion for summary judgment. FED. R. CIV. P. 12(d). "[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, if documents are either (1) attached to the complaint or (2) incorporated by reference into the complaint, they may be considered. Id.; see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Additionally, "a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*'" may be considered by the court in ruling on such a motion." Id. (alteration in original) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)). If public records are integral to a complaint, "the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records." Id. Exhibits offered by a defendant are not considered on a motion to dismiss if they do not fit within one of these categories. Leonard F. v. Isr. Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999).

If a source's "accuracy cannot reasonably be questioned," facts that can be readily determined through those sources and are thus "not subject to reasonable dispute" can be judicially noticed. FED. R. EVID. 201(b). Judicial notice is appropriate for "a document filed in another court

not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)). In a case where preclusion, and therefore the validity of other litigation, is at issue, the ability of the court to examine the record of that litigation is squarely within the concept of judicial notice. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[A] plaintiff whose complaint alleges that [other filings] are legally deficient can hardly show prejudice resulting from a court's studying of the documents. Were courts to refrain from considering such documents, [misleading claims] could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.")

Both Plaintiff and Defendants attach a number of documents from the Florida action, none of which have been objected to. Although those documents include private correspondence and other documents, the validity of the court orders and filings from the Florida action are not disputed by either party and have sufficient indicia of reliability for the Court to take judicial notice of them. The Court will therefore consider Plaintiff's fifty-five Exhibits attached to the Amended Complaint. Dkt. Nos. 11-1 to -9. To establish as close to complete a record of the Florida action as possible, the Court will also take judicial notice of Composite Exhibits 10-21, 23-27, 33-37, and 42-46 to Plaintiff's Response and the four Exhibits attached to Plaintiff's Sanctions Response as public records that are integral to Plaintiff's Amended Complaint.[23] Dkt. Nos. 55-2 at 37-81, 86-106; 55-3

_____

[23] Defendants have also attached nineteen documents from the Florida action as seven Exhibits their Motion to dismiss, including the Florida Complaint, the Florida Amended Complaint, and a number of orders by the Florida state court. Dkt. Nos. 51-2 to -5; 51-10; 51-11. The Court has reviewed each of these nineteen documents and finds that Plaintiff has attached substantially identical reproductions of each of these documents to his Amended Complaint or to his Response as

at 71-149; 55-4 at 1-49, 73-107; 73 at 11-66. Plaintiff's motion to reopen the Florida action, which

is attached to his Response, is also judicially noticed. Fla. Mot. Reopen; Fla. Mot. Reopen Aff. The

Court further takes judicial notice of three Exhibits of court orders in the Florida action issued after

the conclusion of motion practice and filed by Defendants. Dkt. No. 66-1.[24] Finally, since the

Florida action has progressed since briefing was completed by the parties, the Court further takes

judicial notice of the docket sheet for the Florida action on the Osceola County Courthouse's

website. Fla. Docket Sheet.

### 2. Full Faith and Credit

Judicial proceedings in state courts of the United States "shall have the same full faith and

credit in every court within the United States . . . as they have by law or usage in the courts of such

State . . . from which they are taken." 28 U.S.C. § 1738. Two inquiries are required in determining

whether to extend full faith and credit to a foreign court judgment. First, "the court is obliged to

enforce the judgment only to the extent that the courts of the rendering state would be similarly

bound." Weininger v. Castro, 462 F. Supp. 2d 457, 471 (S.D.N.Y. 2006); accord Matsushita Elec.

Indus. Co. v. Epstein, 516 U.S. 367, 375 (1996). Therefore, "if the state courts would entertain a

---

among the eighty-three Exhibits being considered. While the requirement that the Plaintiff attach
documents to consider on the Motion to dismiss does not apply to the judicial notice rule in this
context, the Court will cite to Plaintiff's versions of the documents for convenience, consistency,
and in recognition of the inferences to be drawn in favor of the non-moving party.

[24] Defendants originally filed a Letter Motion on June 29, 2015 requesting to include the
three orders at issue. Dkt. No. 61. However, the attached Exhibits to this Letter Motion were not
signed. Dkt. No. 61-2. Defendants therefore filed an Affidavit in support of the Letter Motion
the next day attaching the same orders with signatures and stamps. Dkt. No. 66; 66-1. The Court
granted Defendants' Letter Motion that same day without reference to the Affidavit or the updated
Exhibits. Dkt. No. 70. The Court will refer to the updated copies of the Exhibits with stamps and
signatures as the operative copies of the Exhibits.

collateral attack on the judgment, so may the federal courts." <u>Johnson v. Muelberger</u>, 340 U.S. 581, 587 (1951). Second, there must not be an "obvious and grave jurisdictional defect apparent on the face of the court's order." <u>Vera v. Republic of Cuba</u>, 40 F. Supp. 3d 367, 375. "Even as to questions of jurisdiction, if the questions have been fully and fairly litigated and finally decided, the judgment is entitled to full faith and credit." <u>Id.</u>

### a. State Court Collateral Attack

"A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81. A collateral attack upon a state court judgment cannot be permitted if such a collateral attack were not available in the state court where the original judgment was rendered. <u>Johnson v. Muelberger</u>, 340 U.S. 581, 585 (1951). When a party contests giving full faith and credit to a foreign court judgment, their arguments should be read as if it were a collateral attack brought under that foreign court's rules. <u>See</u> <u>Vera</u>, 40 F. Supp. 3d at 375 (construing a motion to dismiss as a collateral attack of a Florida judgment and analyzing under Rule 1.540); <u>see also</u> <u>McCloud v. Lawrence Gallery, Ltd.</u>, No. 90 Civ. 30, 1991 WL 136027, at *5 (S.D.N.Y. July 12, 1991) ("[Through their summary judgment motion,] defendants appear to invite this court to undertake a collateral challenge to the Ohio judgment, presumably by applying either general due process standards or the Ohio equivalent of [Rule 60].").

Florida Rule of Civil Procedure 1.540 "provide[s] an exception to the rule of absolute finality by allowing relief under a limited set of circumstances." <u>Bank of N.Y. Mellon v.</u>

<u>Condominium Ass'n of La Mer Estates, Inc.</u>, 175 So.3d 282, 285 (Fla. 2015);[25] <u>see also</u> FLA. R. CIV.

P. 1.540. "[T]he one exception to the rule of absolute finality is rule 1.540." <u>Bane v. Bane</u>, 775

So.2d 938, 941 (Fla. 2000). "Except as provided by Rule 1.530 and 1.540, Florida Rules of Civil

Procedure, the trial court has no authority to alter, modify or vacate an order or judgment." <u>Shelby</u>

<u>Mut. Ins. Co. v. Pearson</u>, 236 So.2d 1, 3 (Fla. 1970).[26] Rule 1.540 provides, in relevant part:

> [T]he court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertense, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application.

FLA. R. CIV. P. 1.540(b).

Plaintiff, in the Amended Complaint and his Response, broadly alleges that opposing parties

and the court engaged in fraud and misconduct and that the Florida state court never properly had

---

[25] The doctrine flowing from <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938), discusses what state-law sources a federal court should turn to in determining the content of state law. "Where possible, it is our responsibility to predict how the forum state's highest court would rule." <u>O'Mara v. Town of Wappinger</u>, 485 F.3d 693, 698 (2d Cir. 2007). "[W]here sufficient precedents exist for us to make this determination," including both state high court and state lower court precedents, they should be followed unless unusual circumstances exist. <u>DiBella v. Hopkins</u>, 403 F.3d 102, 111 (2d Cir. 2005) (quoting <u>Elliot Assocs., L.P. v. Banco de la Nacion</u>, 194 F.3d 363, 370 (2d Cir. 1999)). As a result, the Court will heavily favor Florida Supreme Court precedent over that of lower Florida appellate courts unless no Supreme Court precedent is found.

[26] Rule 1.530 deals with procedures such as new trials, the limitations periods on which are all fifteen days and started running in this case on April 17, 2015, the date of final judgment. Fla. Final J.

either personal or subject matter jurisdiction. Am. Compl.; Resp. Mem. These arguments are most clearly aligned with subsections (3) and (4) of Rule 1.540(b) and thus will be construed as such for purposes of determining whether the Florida judgment is open to collateral attack.[27]

Plaintiff filed a Motion to Reopen pursuant to Rule 1.540 dated May 14, 2015. Fla. Mot. Reopen. The Florida state court denied this motion on June 26, 2015. Dkt. No. 66-1 at 1-2 ("Florida Reopen Order"). The Court cannot accord such an order preclusive effect before giving full faith and credit to the Florida judgment and would hesitate to do so if able as the Florida Docket Sheet also notes that Plaintiff's appeal of the June 26, 2015 order is still pending. Fla. Docket Sheet; see also Notice Appeal.[28] Although general principles of comity may entitle the Florida Reopen Order to some weight, the Court will, out of an abundance of caution, turn to the merits of Plaintiff's claims mindful of the fact that the Florida state court has already denied these claims.[29]

---

[27] Plaintiff's Motion to Reopen, which substantially restates the arguments contained in his filings in the instant action, is also brought pursuant to Rule 1.540(b)(3)-(4). Fla. Mot. Reopen.

[28] While courts are not barred from finding claims and issues precluded even when the prior judgment is pending appeal, In re Hedged-Investments Assocs., Inc., 48 F.3d 470, 472-73 (10th Cir. 1995), this is generally disfavored as a policy matter due to administrability concerns. 18A Charles Alan Wright et al., Federal Practice and Procedure § 4433 (2d ed. 2002). As per the Notice of Appeal, Plaintiff is only appealing the denial of his Motion to Reopen and a separate order to show cause filed by Defendants and addressed by the Florida state court on the same day as the Motion to Reopen. Notice Appeal; see also Dkt. No. 66-1 at 3-4 (order to show cause ruling). Therefore, the Final Judgment, which has not itself been appealed, is not subject to these concerns regarding pending appeals.

[29] Another factor favoring an independent review of the merits of the collateral claims is the fact that the Florida Reopen Order merely states the following with regards to the merits of Plaintiff's claims: "[T]he Court [has] determined that the issues presented in Defendant's Motion . . . have been the subject of earlier motions filed by Defendant, have been denied after full consideration and that repetitive motions, even if filed with different terminology and changed words and exhibits, are disfavored . . . ." Fla. Reopen Order at 1. If the Court is unable to yet extend full faith and credit to the Florida judgment itself and other findings made therein, it should independently review these claims in deciding whether or not full faith and credit is warranted.

*i. Fraud, Misrepresentation, and Misconduct*

As noted by Plaintiff, Rule 1.540 specifically provides that it "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court." FLA. R. CIV. P. 1.540(b). The Supreme Court of Florida has read this provision as merely preserving the common-law "fraud on the court" ground for vacating a judgment.  See Parker v. Parker, 950 So.2d 388, 391-92 (Fla. 2007) (citing DeClaire v. Yohanan, 453 So.2d 375, 377-78 (Fla. 1984)) (discussing the common-law rule of only allowing extrinsic fraud claims in independent equity actions as an exception to finality and Rule 1.540's broadening of this exception).  As a result, the Court will disregard the distinction between extrinsic and intrinsic fraud as Plaintiff has alleged both and is still within the statute of limitations for both.

Plaintiff claims, in relevant part, that (1) Florida counsel for Defendants was unauthorized to represent Defendants in court due to improper service and failure to file a notice of appearance; (2) the Florida state court erred in considering Defendants' motion to amend the Florida Complaint because a motion to amend, as well as other required attachments, was never filed or served; (3) the service of the Florida Amended Complaint was therefore fraudulent and, alternatively, was not accompanied by a summons; (4) Defendants misrepresented their damages so as to exceed the jurisdictional requirement of $15,000.00; (5) the Florida state court fraudulently added additional plaintiffs to the case caption "by judicial fiat"; and (6) all other proceedings following the motion to amend the Florida Complaint were therefore also fraudulent.  Mot. Reopen at 30-39.

An attorney may appear in a Florida proceeding "by serving and filing, on behalf of a party, the party's first pleading or paper in the proceeding." FLA. R. JUD. ADMIN. 2.505(e)(1).

Defendants' counsel in Florida's signature on the Florida Complaint is sufficient to prove that he filed the Florida Complaint. Fla. Compl. ¶ 29. The claim of improper service does not defeat the admission by Plaintiff that the Florida Complaint was served. Mot. Reopen at 30. In an absence of published state precedents, the Court concludes that the Florida Supreme Court would be unlikely to invalidate a purported notice of appearance due to a defect in service, as this would result in significant administrative difficulties.

As to the second point, Plaintiff attaches Defendants' motion to amend and a proposed amended complaint to his own instant Amended Complaint. Dkt. No. 11-4 at 5-45. Furthermore, the mere failure to file does not, by itself, constitute a misrepresentation or misconduct. While improper service can be part of a fraud on the court or misrepresentation upon the court, Plaintiff does not plead any facts consistent with a claim of misrepresentation, misconduct, or fraud regarding the service of the Florida Amended Complaint. Furthermore, the Florida order granting leave to amend required only the Florida Amended Complaint to be served on Plaintiff. Dkt. No. 11-4 at 81. With respect to the amount in controversy in the Florida action, "jurisdiction of a court in reference to the amount in controversy is determined by the sum in good faith demanded . . . ." Tucker Bros., Inc. v. Menard, 90 So.2d 908, 912 (Fla. 1956). Absent a showing of bad faith in any regard, which Plaintiff has not done, it is impossible to consider this representation misconduct or fraud.

Since the last two claims assume the invalidity of the Amended Complaint and its service, they cannot be substantiated. Mindful of the Florida Reopen Order's finding that these issues were both sufficiently litigated and without merit, the Court finds no fraud, misconduct, or misrepresentation sufficient to collaterally attack the Florida judgment under Rule 1.540.

*ii. Void Judgment Due to Lack of Jurisdiction*

The void judgment provision of Rule 1.540 "is intended to ensure that in granting judgment

based on proper subject matter and personal jurisdiction, the court did not violate either party's right

to due process." Vera, 40 F. Supp. 3d at 376; see also Malone v. Meres, 109 So. 677, 682 (Fla.

1926) ("A judgment that is absolutely null and void . . . can be set aside and stricken from the record

on motion at any time, and may be collaterally assailed, [but] [i]f the court has acquired jurisdiction

of the subject matter and of the parties, the judgment or decree entered is binding.").

Plaintiff attaches, among several other exhibits, two transcripts from telephonic hearings in

April and June 2013, respectively, where Plaintiff contests both subject matter and personal

jurisdiction. Apr. Tr., June Tr. He also attaches an order addressing a cross-claim he made, filed

September 24, 2014, in which the Florida state court "notes that these issues were previously ruled

on, however in an abundance of caution, the Court again addresses these issues." Dkt. No. 55-2 at

76-77 ("Cross-Claim Order").[30] The Florida state court allowed Plaintiff to state his claims during

each of the two hearings. Apr. Tr. at 68:17-70:9; June Tr. at 7:22-10:6, 15:10-17:4. While the court

did not rule directly on the issue of jurisdiction at the April hearing, it did so at the June hearing.

June Tr. at 17:14-21. The court did so after considering arguments for both parties, and the

transcript appears to indicate that the court asked Defendants' counsel for clarification on the issue

of venue. Id. at 17:9-13. In addition to this ruling, the court, in responding to Plaintiff's cross-claim

in September 2014, outlines the requirements of subject matter jurisdiction, which in the relevant

Florida state court is merely an amount in controversy over $15,000.00. Cross-Claim Order at 76-

---

[30] The Cross-Claim Order, as Composite Exhibit 20 attached to Plaintiff's Response, starts on Page 76 of Dkt. No. 55-2, running for three pages. Dkt. No. 55-2 at 76-78. The pagination is that assigned by ECF as opposed to the pagination in the original document.

77.  The court then noted that this had properly been pleaded in the Florida Amended Complaint. Id. at 77.  The Court additionally notes that the good-faith sum demanded, as mentioned above, is sufficient under Florida law.

As to personal jurisdiction, the Florida state court expressly mentioned in both the April and the June hearings that this defense was subject to waiver based on the filing of an answer that did not preserve the claim.  Apr. Tr. at 71:20-22; June Tr. at 18:3.  In fact, the court, at the request of Defendants, allowed Plaintiff to amend his answer, if he so chose, to incorporate the personal jurisdiction argument.  June Tr. at 18:3-14.  In affording Plaintiff this opportunity, which Plaintiff was not automatically entitled to, the Florida state court far exceeded the guarantees of due process. The fact that Plaintiff did not avail himself of this opportunity, even in the face of numerous subsequent motions to dismiss, substantially damages his argument that he was not afforded due process in contesting personal jurisdiction.  Furthermore, the Cross-Claim Order states Plaintiff unquestionably consented to personal jurisdiction in the Florida action.  Cross-Claim Order at 77. The Court further notes that while Plaintiff is correct that improper service of process is sometimes construed as a jurisdictional motion, Fla. Dep't of Children & Families v. Sun-Sentinel, Inc., 865 So.2d 1278, 1286 (Fla. 2004), it must be raised in the initial instance to be given such force regardless of any actual lack of jurisdiction, Babcock v. Whatmore, 707 So.2d 702, 704 (Fla. 1998). Given the repeated findings, the legal support, and the extra protections afforded Plaintiff in the Florida action, the Court finds that subject matter and personal jurisdiction were properly found.

### b.  Jurisdictional Defect

A judgment is typically entitled to full faith and credit "when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court

which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111. However, if a court lacked subject matter jurisdiction, full faith and credit would not apply. Matsushita, 516 U.S. at 386. The second court would have to "ensure that the originating court's order did not violate the guarantees of federal due process under the U.S. Constitution." Vera, 40 F. Supp. 3d at 376.

As stated above, subject matter jurisdiction was not only found, but litigated twice, if not three times, in the Florida state court. There are no facts raised by either side that would indicate that the results were arrived at unfairly. As a result, the Court finds that the Florida action has met the constitutional requirements for full faith and credit under 28 U.S.C. § 1738.

### 2. Claim Preclusion

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). "The doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties . . . but also of claims that might have been raised in the prior litigation but were not." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015). A defendant seeking to raise the affirmative defense of claim preclusion "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) (quoting Monahan v. N.Y.C. Dep't of Corrs., 214 F.3d 275, 285 (2d Cir. 2000)). A default judgment functions as a final judgment on the merits. Saud v. Bank of N.Y., 929 F.2d 916, 919 (2d Cir. 1991).

It is clear that the Florida Final Judgment is a final judgment on the merits. The parties in the Florida action are also identical to the parties in this action. Therefore, claims that Plaintiff raises will be precluded if they could have been raised in the prior action. For initial defendants who bring new suits as plaintiffs, if they fail to plead a compulsory counterclaim, "the claim cannot be raised in a subsequent lawsuit." Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000); see also FED. R. CIV. P. 13(a) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction."); Stevenson v. Corp. of Lloyd's, No. 15-cv-2745, 2016 WL 524735, at *5 n.6 (M.D. Fla. Feb. 10, 2016) (discussing the Florida compulsory counterclaim rule being modeled after, and functionally identical to, the federal rule), appeal filed, No. 16-10704 (Feb. 22, 2016). Actions arise out of the same transaction when "the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997)).

The five claims Plaintiff raises can be easily divided into two categories "related in . . . origin." Id. The first, second, fourth, and fifth claims arise directly from the Florida action and wrongful acts allegedly carried out by Defendants in the course of litigation. The third claim, regarding intentional misconduct that caused the breach of the underlying contract, is more properly characterized as arising out of the underlying contract.

The Second Circuit has recognized that claims arising after the filing of the first suit cannot

typically be considered part of the same transaction and occurrence. Compare TechnoMarine, 758 F.3d at 501 ("[I]f a party sues for a breach of contract, 'res judicata will preclude the party's subsequent suit for any claim of breach that had occurred *prior* to the first suit.'" (quoting Prime Mgmt. Co. v. Steinegger, 904 F.2d 811, 816 (2d Cir. 1990))), with Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000) ("While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."). In this case, while the claims arising out of the lawsuit might be considered part of the same transaction since they arguably form a convenient trial unit and are related in motivation, they cannot be precluded as they arose from events that occurred after the Florida Complaint was filed, focusing primarily on the approval of the Florida Amended Complaint. Am. Compl. ¶¶ 29-46, 62-71. The third cause of action, however, flows directly from the original contract at issue in the Florida action, id. ¶¶ 51-57, and the Court finds that they arise out of the same transaction. As a result, Plaintiff is precluded from bringing his third and fourth claims for breach of contract and impairment of business relationship as they should both have been brought in the Florida action.

### 3. *Issue Preclusion*

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892 (quoting New Hampshire, 532 U.S. at 748-49). "Under New York law, collateral estoppel bars a party from relitigating an issue that (1) was actually and necessarily decided in a prior proceeding, and (2) that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding."

Gourdine v. Prack, No. 15-CV-0101, 2015 WL 9487866, at *4 (N.D.N.Y. Nov. 4, 2015) (Kahn, J.) (citing McKithen v. Brown, 481 F.3d 89, 105 (2d Cir. 2007)). "Determination of whether collateral estoppel applies does not depend on whether the relief now sought was available in the [prior proceeding]; what matters is whether there was a full opportunity to litigate identical issues." Burgos v. Hopkins, 14 F.3d 787, 792 (2d Cir. 1994). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995).

Questions of jurisdiction, if at issue in a subsequent case, can be analyzed through the lens of issue preclusion. Durfee v. Duke, 375 U.S. 106, 113 (1963) ("'The principles of res judicata apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter of the parties." (quoting Treinies v. Sunshine Mining Co., 308 U.S. 66, 78 (1939))); see also Key v. Wise, 454 U.S. 1103, 1108 ("Durfee is simply an application of the normal rules of collateral estoppel to jurisdictional determinations.").

Plaintiff has four remaining claims not subject to claim preclusion; all four directly rely on the fraudulent nature of the Florida action, and by extension, the lack of either personal or subject matter jurisdiction in the Florida action. Am. Compl. ¶ 28 (discussing lack of jurisdiction with respect to the first claim); id. ¶ 46 (discussing lack of jurisdiction with respect to the second claim); id. ¶ 65 (discussing fraudulent nature of action with respect to the fourth claim); id. ¶ 71 (discussing Defendants' inability to sue Plaintiff in the Florida action with respect to the fifth claim). If a "full opportunity" to litigate the jurisdictional question existed in the Florida action, Plaintiff's remaining claims would be issue precluded.

As discussed above, Plaintiff has attached records of at least two, if not three, instances in which he was given the opportunity to raise and argue questions of both subject matter and personal jurisdiction.  See Apr. Tr.; June Tr.; Cross-Claim Order.  In each of those three instances, the Florida state court actually decided the issue of jurisdiction, or in the case of the April hearing, explained why the jurisdictional question was not germane.  Apr. Tr. at 71:7-24; June Tr. at 17:14-21; Cross-Claim Order at 76-77.  Furthermore, Plaintiff has not met his burden of showing that he did not receive a full and fair opportunity to litigate these issues.  While several of his motions to dismiss for lack of jurisdiction were denied without detailed reasoning, these orders relied on the fact that these issues had already been fully and fairly litigated in the past.  E.g., Dkt. No. 55-2 at 41, 53-60, 63, 72-74.  If anything, Plaintiff's Exhibits demonstrate the extent to which the Florida court allowed Plaintiff to renew his arguments in the face of repeated denials on the merits above and beyond the minimum standard of fairness.

Therefore, the Court finds that Plaintiff is precluded from claiming that the Florida state court lacked subject matter jurisdiction.  Since this is an essential presumption of Plaintiff's remaining four claims, those claims are all subject to dismissal on issue preclusion grounds.

### 4. Opportunity to Amend

The Second Circuit has held that a district court "should not dismiss [a *pro se* plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).  This case gives no such indication, given that Plaintiff's claims both in the Florida action and in the instant action are limited to either the original contract or claims presuming the invalidity of jurisdiction in the Florida action, either of which will necessarily be precluded.

Given that Plaintiff has also already amended his Complaint once, the Court does not grant Plaintiff a further opportunity to amend.

### C. Cross-Motion for Sanctions

Defendants claim that the Motion to Strike was "filed solely to harass and annoy defendants and their counsel." Dkt. No. 64-1 at 6. They move to sanction Plaintiff under Rule 11, or alternatively, through the Court's inherent power or under Rule 7.1 of the Local Rules. Sanctions Mem. at 7-8. Each of these will be addressed in turn.

#### 1. Rule 11

Under Rule 11(b)(2), an unrepresented party filing papers with the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2). When ruling on a motion for Rule 11 sanctions, a district court "must adhere to the procedural rules which safeguard due process rights." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 58 (2d Cir. 2000); see also Perpetual Sec. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002) ("The district court's awarding of sanctions . . . in contravention of the explicit procedural requirements of Rule 11 was . . . an abuse of discretion.").

Rule 11 was amended in 1993 to include a "safe harbor provision," which requires the party seeking sanctions to first provide the opposing party with formal notice of their intent to seek sanctions. Id. The opposing party then has 21 days to withdraw or appropriately correct the potentially offending statements before a Rule 11 Motion can be filed with the Court. Id.; see also Storey v. Cello Holdings, LLC, 347 F.3d 370, 389 (2d Cir. 2003). The purpose of this provision is

to encourage parties to abandon questionable contentions by allowing them to avoid sanctions with the timely withdrawal of meritless claims. FED. R. CIV. P. 11; Adv. Comm. Notes, 1993 Amend. A motion that does not comply with Rule 11's safe harbor provision must be denied. Bryant v. Britt, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (affirming district court's decision to deny sanctions where movant failed to comply with Rule 11(c)(2)); see also Star Mkt. Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement.").

The affirmation, memorandum, and seven attached exhibits do not indicate any effort on the part of Defendants to comply with the safe harbor provision contained within Rule 11. As a result, the Court must deny the motion for sanctions under Rule 11.

### 2. Sanctions Pursuant to the Court's Inherent Power

Rule 11 allows a court to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." FED. R. CIV. P. 11(c)(1); see also id. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). In order to impose sanctions pursuant to its inherent power, a district court must find that the claim lacked a colorable basis and that the claim was brought in bad faith. Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." Id. at 50.

Plaintiff's Motion to strike lists numerous grounds, some of which are factually improper

and others of which have a grounding in the Local Rules. Given that Plaintiff is proceeding *pro se*, and given that the documents from the Florida action illustrate Plaintiff's earnest belief that courts have less discretion to interpret rules than they do, the Court finds that Defendants have not shown that Plaintiff acted in bad faith in bringing a motion to strike on the basis of technical violations of the Local Rules.

In the Sanctions Memorandum, Defendants also discuss the representation that the Florida action had been reopened, which they consider a material misstatement subject to sanctions. Sanctions Mem. at 9; see also Resp. ¶ 3. Given that Plaintiff attached the Florida Motion to Reopen directly to his Response without a corresponding order granting the motion, the Court does not find that this is more than an inadvertent mischaracterization by a *pro se* plaintiff.

Furthermore, there is no indication from Defendants that Plaintiff's conduct, even if done in bad faith, could not be adequately sanctioned under the Rules as opposed to through the Court's inherent power. Therefore, the Court declines to sanction Plaintiff using its inherent power.

### 3. *Failure to Comply with Local Rule 7.1*

"A party who presents vexatious or frivolous motion papers or fails to comply with this Rule is subject to discipline as the Court deems appropriate, including sanctions and the imposition of costs and attorney's fees to the opposing party." N.D.N.Y. L.R. 7.1(i). If there is a clear and obvious violation of the Local Rules, sanctions, or an order to show cause, are often imposed without any prior warning by the court. See Grassi v. Lockheed Martin Fed. Sys., Inc., 186 F.R.D. 277, 278-79 (N.D.N.Y. 1999) (failing to file a memorandum of law or a statement of material facts in a cross-motion for summary judgment); Beyland v. Rome Cable Corp., No. 96CV627, 1998 WL 690926, at *5 (N.D.N.Y. Sept. 30, 1998) (failing to appear for a hearing); Knight v. New York, No.

95-CV-1635, 1996 WL 705801, at *6 (N.D.N.Y. Dec. 2, 1996) (filing a counseled motion for judgment by default when time for response had not yet expired). However, a motion for sanctions solely for frivolous or vexatious motion practice often results in merely a warning. See <u>Lunera Lighting, Inc. v. Nexus Light Drive, LLC</u>, No. 09-CV-0229, 2009 WL 2824744, at *6 (N.D.N.Y. Aug. 27, 2009) ("Here, the court does not find Nexus' motion to have been vexatious or frivolous, although its arguments were admittedly weak. As such, the parties' requests for sanctions are denied, with the admonishment that Nexus should not file future motions before it has objectively assessed the strength of its position."). Even clear violations can be excused in the interest of justice in the absence of bad faith. See <u>NXIVM Corp. v. Foley</u>, No. 14-cv-1375, 2015 WL 7776923, at *5 (N.D.N.Y. Dec. 2, 2015) (Kahn, J.) (merely striking a filing as opposed to imposing sanctions because "the Court does not find that this conduct constitutes bad faith").

Defendants point to a violation of Rule 7.1(b)(2), which states that "the parties must make good faith efforts among themselves to resolve or reduce all differences relating to the non-dispositive issue." Sanctions Mem. at 7-8. The Court is aware that the parties have corresponded regarding other matters. Dkt. Nos. 48; 50. However, Defendants' claim of the failure to discuss the Motion to strike is not a sufficient indicator of bad faith to trigger sanctions under Rule 7.1 in light of Plaintiff's *pro se* status and the evidence of his honest, if incorrect, beliefs mentioned above. Given that the Court has already found no bad faith with regard to Plaintiff's other conduct, the Court declines to assess sanctions under Local Rule 7.1. Therefore, Defendants' Cross-Motion for sanctions is denied.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 58) to strike is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 51) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 11) is **DISMISSED** without leave to amend; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 64) for sanctions is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      March 15, 2016
                  Albany, New York

Lawrence E. Kahn
U.S. District Judge